**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION AT DAYTON**

**Jessica Miller, et al.,**

       *Plaintiffs*,

v.                                                                 **Case No. 1:05-cv-764
Judge Thomas M. Rose**

**The University of Cincinnati,**

       *Defendant*.

---

**ENTRY AND ORDER CERTIFYING A CLASS CONSISTING OF ALL PRESENT AND FUTURE MEMBERS OF THE UNIVERSITY OF CINCINNATI WOMEN'S ROWING TEAM, GRANTING IN PART PLAINTIFFS' MOTION TO CERTIFY CLASS.** (DOC. 7).

---

Pending before the Court is Plaintiffs' Motion to Certify Class. Doc. 7. Therein, Plaintiffs request that the Court certify a class consisting of "All present, prospective and future participants in the women's athletics program at the University of Cincinnati." Doc. 7 at 1.[1] Plaintiffs are female athletes on the University of Cincinnati women's rowing team. Plaintiffs allege that the University of Cincinnati denies women the equal opportunity to compete for and to receive athletic scholarships and denies women equal access to athletic benefits and opportunities in the provision of training facilities, equipment and supplies, scheduling of practice times, travel and per diem

---

[1] While the instant motion was filed prior to the Court's approval of Plaintiff's motion to amend its complaint, the motion to certify informs that it addresses the class as defined in the First Amended Complaint. Doc. 7 n.1. The Second Amended Complaint differs only in adding names of current members of the University of Cincinnati women's rowing team. Plaintiffs have requested and been granted permission to file a second amended complaint, see doc. 19 and entry of October 16, 2006.

allowances, coaching, locker rooms, practice and competitive facilities, medical facilities and services, dining facilities and services, publicity, support services, and recruitment of student athletes, all in violation of Title IX of the Education Amendments of 1972, 20 U.S.C. § 1681-87 and the Equal Protection Clause of the Fourteenth Amendment of the United States Constitution. Doc. 6-1, proposed first amended complaint.

**I.     Background**

The First Amended Complaint alleges that athletes on the University's women's rowing team faced discriminatory treatment, including discrimination in the areas of equipment and facilities. The women's rowing team allegedly has never had enough boats to properly train. Neither, it is alleged, has the team ever had adequate facilities to store, maintain and repair the boats they were provided. The team apparently has never had enough rowing machines to work out as a team. It has never even had a meeting room large enough to allow the members to meet together as a team.

The complaint further asserts that the team is given the least desirable workout times for weight training. The team lacks adequate sports-specific equipment. It does not have adequate transportation to their outdoor training area. According to the complaint, the team has too few coaches or assistant coaches and little if any access to trainers. No one helps them with their equipment. Team members don't have enough event or practice apparel. When the team travels, it stays at budget hotels, sleeping four to a room and two to a bed. The complaint recites numerous other examples of unequal treatment.

The complaint asserts that the women's rowing team exemplifies how female athletes as a whole are treated unfairly when the benefits and services provided to male athletes are compared

to the benefits and services provided to female athletes. It claims no men's team is treated so poorly with regard to benefits and services.

Finally, the complaint asserts that the university itself reports that scholarship awards are not substantially proportionate to men's and women's respective rates of athletics participation. The 227 female athletes at the university (comprising 45.3% of all athletes) receive only 41.1% of the scholarship dollars while males (comprising 54.7% of all athletes) receive 58.9% of the scholarship dollars.

**II.     Analysis**

At this stage of the litigation, Plaintiffs seek certification of a class, which Defendant opposes. Motions to certify a class are governed by Federal Rule of Civil Procedure 23.

**A.     Rule 23**

The party seeking to certify a class action has the burden of demonstrating that all of the prerequisites of Rule 23(a) are met, and that the case falls within one of the subcategories listed in Rule 23(b). *Senter v. General Motors Corp.*, 532 F.2d 511, 522 (6th Cir. 1976).

Rule 23(a) provides that:

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

The Plaintiffs argue that this suit fits within the second category of Rule 23(b), according to which:

> An action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and, in addition ... (2) the party opposing

> the class has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole….

Fed. R. Civ. P. 23(b)(2).

The party seeking class certification has the burden of proof. *In re Medical Sys., Inc.*, 75 F.3d 1069, 1079 (6th Cir. 1996). The Court must conduct a "rigorous analysis" into whether the prerequisites of Federal Rule of Civil Procedure 23 are met before certifying a class action. *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 161 (1982). "[I]t may be necessary for the court to probe behind the pleadings before coming to rest on the certification question." *General Tel. Co. of the Southwest*, 457 U.S. at 160. "The trial court has broad discretion in deciding whether to certify a class, but that discretion must be exercised within the framework of Rule 23." *American Med. Sys.*, 75 F.3d at 1079.

In considering a motion for class certification, however, the court may not inquire into the merits of the claim. *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 177-78 (1974). "The court must accept all of the factual allegations within the complaint as being correct and draw all reasonable inferences from those facts." *Mayo v. Sears, Roebuck & Co.*, 148 F.R.D. 576, 579-80 (S.D. Ohio 1993). "[W]hen determining the maintainability of a class action, the district court must confine itself to the requirements of Rule 23 and not assess the likelihood of success on the merits." *Weathers v. Peters Realty Corp.*, 499 F.2d 1197, 201(6th Cir. 1974).

The Court bears in mind that, pursuant to Rule 23(c)(4), "an action may be brought or maintained as a class action with respect to particular issues." Fed. R. Civ. P. 23(c)(4)(A). Finally, after certification of a class, "the class definition is subject to refinement based upon further

development of the record, and can be expanded or contracted if the facts so warrant...." *Boggs v. Divested Atomic Corp*, 141 F.R.D. 58, 61-62 (S.D. Ohio 1991).

**B.     Class Definition**

"Before delving into the 'rigorous analysis' required by Rule 23, a court first should consider whether a precisely defined class exists and whether the named plaintiffs are members of the proposed class." *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 477 (S.D. Ohio 2004). Important elements of defining a class include: (1) specifying a particular group that was harmed during a particular time frame, in a particular location, in a particular way; and (2) facilitating a court's ability to ascertain its membership in some objective manner. *Id.*

Proper identification of the proposed class serves two purposes: it permits the Court to determine whether a class action is truly the most efficient way of trying the case; and it ensures that those individuals actually harmed by the defendants' wrongful conduct will be the recipients of the awarded relief. *Oshana v. Coco-Cola Co.*, 225 F.R.D. 575, 580 (N.D. Ill. 2005) (citing *Simer v. Rios*, 661 F.2d 655, 670 (7th Cir. 1981)). The identities of the class members do not need to be specified for certification, but the proposed class must be sufficiently definite in order to demonstrate that a class actually exists. *Id.* "Requiring an objectively ascertainable class is important because without one, it will be unclear who is bound by the judgment...." *Rodriguez v. Gates*, 2002 WL 1162675 at *9 (C.D. Cal. 2002). "The class definition identifies the persons who are entitled to relief, bound by final judgment, and entitled to notice under Rule 23(b)(3). As such, it implicates substantial due process rights for both class members and the Defendants." *Id.* at 442.

"Common class certification issues include evaluating proposed classes that are ill-defined or too broad." *McGee v. East Ohio Gas Co.*, 200 F.R.D. 382, 388 (S.D. Ohio 2001). Where extensive factual inquiries are required to determine whether individuals are members of a proposed class, class certification is likely improper. *Snow v. Atofina Chem., Inc.*, 2006 WL 1008002 at *8-9 (March 31, 2006); *Bostic v. St. Judge Med., Inc.*, 2004 WL 3313614 at *16 (W.D. Tenn. 2004) ("an inquiry into the merits of the case should not be required of the court in its determination of whether a person is a member of class").

A proposed class may be deemed overly broad if it "would include members who have not suffered harm at the hands of the Defendant and are not at risk to suffer such harm." *McGee*, 200 F.R.D. at 388. "A properly defined class includes only members who would have standing to bring suit in their own right." *R.C. v. Nachman*, 969 F. Supp. 682, 695 (M.D. Ala. 1997); see also, *Pottinger v. City of Miami*, 720 F. Supp. 955, 957 (S.D. Fla. 1989) ("[t]he description of the class is sufficiently definite if any member of the proposed class would have the requisite standing to sue on his own behalf.").

**C.    Rule 23(a) Factors**

The Rule 23(a) factors are commonly referred to as (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.

**1)    Numerosity**

Rule 23(a) requires the class to be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). A proposed class meets the numerosity requirement by demonstrating the impracticality, not the impossibility, of joinder. *Fox v. Massey-Ferguson, Inc.*,

172 F.R.D. 653, 660 (E.D. Mich. 1995).  There is no magic number or strict test for determining impracticality of joinder.  *Senter*, 532 F.2d at 523 n. 24.

"When class size reaches substantial proportions…the impracticability requirement is usually satisfied by the numbers alone." *American Med. Sys.*, 75 F.3d at 1079.  Nevertheless, in determining impracticability, the Court should also consider the geographical dispersion of the class, the lack of sophistication of the class members and the reluctance of individual class members to sue individually.  See *Roman v. Korson*, 152 F.R.D. 101, 105-06 (W.D. Mich. 1993); *Young v. Trailwood Lakes, Inc.*, 61 F.R.D. 666, 668 (E.D. Ky. 1974).

"When a class numbers in the hundreds or thousands, the impracticability of joinder is obvious." *Michigan State Univ. Faculty Ass'n v. Michigan State Univ.*, 93 F.R.D. 54, 56 n.1 (W.D. Mich. 1981).  Classes numbering three hundred or so members are routinely held to satisfy the numerosity requirement.  *Id.* at 56.  Nonetheless, courts have certified classes as small as 18 members. *Brady v. Thurston Motor Lines*, 726 F.2d 136, 145 (4th Cir. 1984).  Some courts hold that "a class of 40 or more members is sufficient to establish numerosity." *Appolini v. United States*, 218 F.R.D. 556, 561 (W.D. Mich. 2003).  In determining whether to certify a class, it is not necessary for the Court to know the precise number of class members.  Instead, the Court may rely upon reasonable inferences drawn from the known facts.  *American Med. Sys.*, 75 F.3d at 1079.

**2)** **Commonality**

Rule 23(a)(2) provides that, in order for a class to be certified, there must be "questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  This is because, where there are common questions of law or fact, "the class-action device saves the resources of both the courts and the parties by permitting an issue potentially affecting every [class member] to be litigated in an

economical fashion under Rule 23." *General Tel. Co. of the Southwest v. Falcon*, 457 U.S. 147, 155 (1982) (citation omitted).

For the commonality requirement of Rule 23(a)(2), "there need only be a single issue common to all members of the class." *American Med. Sys.*, 75 F.3d at 1080. "Although Rule 23(a)(2) refers to common questions of law or fact, in the plural, there need only be one question common to the class–though that question must be a 'common issue the resolution of which will advance the litigation.'" *Alkire v. Irving*, 330 F.3d 802, 820 (6th Cir. 2003) (quoting *Sprague v. General Motors*, 133 F.3d 388, 397 (6th Cir. 1998)).

Some courts hold that when the legality of the defendant's standardized conduct to the class is at issue, the commonality factor is normally met. *Appoloni*, 218 F.R.D. at 561; *Bentley v. Honeywell Int'l, Inc.*, 223 F.R.D. 471, 481 (S.D. Ohio 2004) ("where, as here, Plaintiffs allege a common course of conduct by Defendants that caused harm, class certification is proper."). **3)**

**Typicality**

Rule 23(a)(3) requires that "the claims or defenses of the representative parties" be "typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). The purpose of this requirement is to assure that the named representatives' interests align with those of the class. *American Med. Sys.*, 75 F.3rd at 1082. A named plaintiff's claim is considered to be typical "if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members, and if his or her claims are based on the same legal theory." *Id.*

While the class representatives' claims must be typical, "Rule 23 does not require absolute homogeneity." *Tucker v. Union Underwear Co., Inc.*, 144 F.R.D. 325, 329 (W.D. Ky.1992). "Rule 23(a)(3) typicality 'determines whether a sufficient relationship exists between the injury to the

named plaintiff and the conduct affecting the class, so that the court may properly attribute a collective nature to the challenged conduct.'" *Stout v. Byrider*, 228 F.3d 709, 717 (6th Cir. 2000) (quoting *Sprague v. General Motors*, 133 F.3d 388, 399 (6th Cir. 1998)). This inquiry focuses special attention on "differences between class representative claims and class claims that would defeat the representative nature of the class action." *Van Vels v. Premier Athletic Ctr. of Plainfield, Inc.*, 182 F.R.D. 500, 510 (W.D. Mich. 1998).

**4)  Adequacy of Representation**

Pursuant to Rule 23(a)(4), a class may be certified only if "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). "This prerequisite is essential to due process, because a final judgment in a class action is binding on all class members." *American Med. Sys.*, 75 F.3d at 1083. The Sixth Circuit has established a two-part test for determining adequacy of representation: (1) the representative must have common interests with unnamed members of the class, and (2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel. *Senter*, 532 F.2d at 525.

"The adequate representation requirement overlaps with the typicality requirement because in the absence of typical claims, the class representative has no incentives to pursue the claims of the other class members." *American Med. Sys.*, 75 F.3d at 1083.

**D.  Rule 23(b)(2)**

Rule 23(b) provides that an action may be maintained as a class action if the prerequisites of subdivision (a) are satisfied and, one of three other conditions is met. In the instant case, Plaintiffs assert the condition in Rule 23(b)(2) is met: "the party opposing the class has acted or

refused to act on grounds generally applicable to the class, thereby making appropriate final declaratory relief with respect to the class as a whole." Fed. R. Civ. P. 23(b)(2).

Certification under Rule 23(b)(2) is possible only if injunctive relief predominates the claims. *Allison v. Citgo Petroleum Corp.*, 151 F.3d 402, 410 (5th Cir. 1998); *Butler v. Sterling, Inc.*, 210 F.3d 371, 2000 WL 353502, *6 (6th Cir. Mar. 21, 2000); *Rockey v. Courtesy Motors, Inc.*, 199 F.R.D. 578 (W.D. Mich. 2001). Class definitions including "future" class members is permissible under Rule 23(b)(2), which permits class certification without attempted notification of class members. See *Roman v. Korson*, 152 F.R.D. 101, 111 (W.D. Mich. 1993) and *Rodriguez v. Carlson*, 166 F.R.D. 465, 471 (E.D. Wash. 1996) (cf. Rule 23(b)(3), under which parties must provide the "best notice practicable" for class members, including mailed notification, so that class members may "opt out." Rule 23(c)(2)). See *Leyva v. Buley*, 125 F.R.D. 512 (E.D. Wash. 1989) (defining a Rule 23(b)(2) class to include future workers, but defining a Rule 23(b)(3) class as including only workers previously employed).

## III.    Application of Law to Alleged Facts

The Court will first consider the adequacy of representation of the named members with regard to the whole proposed class, particularly with regard to question of whether the representatives have common interests with unnamed members of the class. There is an inherent conflict between the named plaintiffs, who constitute a group including the current members of the University of Cincinnati women's rowing team and the proposed class, "All present, prospective and future participants in the women's athletics program at the University of Cincinnati." This conflict arises because "compliance [with Title IX] might well be achieved by the elevation [of resources devoted to] one sport and not [an]other." *Boucher v. Syracuse University*, 164 F.3d 113 116 (2d Cir.

1999). Indeed, in the instant case, compliance could conceivably be achieved, in part, by taking away the allegedly paltry resources allocated to women's rowing, and bestowing them along with new resources on other women's varsity sports, a prospect to which the representatives would not likely be amenable. Were there proposed members who participated in other women's sports at UC, a class of all current and future women athletes at UC could be created, along with sub-classes of each sport. Cf. *Boucher*, 164 F.3d at 119. Here, however, all proposed members are members of the women's rowing team. As the inadequate representation renders this proposed class too broad, the Court will hereafter consider the possibility of certifying a class consisting of present and future members of the University of Cincinnati women's rowing team.

Limiting the class under consideration to current and future members of the University of Cincinnati women's rowing team provides a specific group that was allegedly harmed during a particular ongoing time frame in a particular location in a particular way, facilitating the Court's ability to ascertain its membership in an objective manner.

There are 21 named Plaintiffs. Plaintiffs assert that the current members of the team, however, number 40. The class of current and future members, moreover, is a class which would naturally expand over time as new members join the rowing team. The fluidity of the membership of the women's rowing team over time, however, informs the Court's consideration of the numerosity factor. Joinder of future class members is inherently impracticable.

Defendant objects that the individual plaintiffs have not provided sufficient information with regard to the individual plaintiffs to determine the degree to which they are typical of the class under consideration or whether the proposed class members share the same injuries. The Court disagrees. The allegations are that no members of the proposed class and none of the individual plaintiffs have

rowing machines, a coach, access to training facilities, et cetera.  While the Court is unaware what members of the team suffered injuries from an alleged auto accident resulting from the failure of the university to provide transportation, none of the members had access to university transportation. Should some of the individual defendants have unique injuries stemming from the auto accident or the absence of a trainer, the Court will exercise its discretion to adjust the class and possibly bifurcate claims.

Plaintiffs have asserted an intention to seek permission to amend the complaint and request a sum certain that would inure to the class as a whole and be divided equally among class members. This motion will likely assuage any Rule 23(b)(2) concerns that monetary damages will be such that injunctive relief would not predominate.  The Court will thus certify a class of "all current and future members of the University of Cincinnati women's rowing team" conditioned upon the filing and granting of this motion.

**IV.    Conclusion**

Because a class defined as "all current and future members of the University of Cincinnati women's rowing team" would satisfy the prerequisites of Federal Rule of Civil Procedure 23 for certification of a class, Plaintiffs' Motion to Certify Class, Doc. 7, is **GRANTED IN PART.** Plaintiffs are directed to file their promised motion to amend their complaint prior to the Rule 26 conference.  The Court will contact the parties to establish a date for a preliminary pretrial conference.

**DONE** and **ORDERED** in Dayton, Ohio, this Monday, December 11, 2006.

                                                s/Thomas M. Rose

                                    _____
                                                THOMAS M. ROSE
                               UNITED STATES DISTRICT JUDGE